**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEX BEREZOVSKY,
   *Plaintiff-Counter-Defendant-*
          *Appellant*,

    v.

GREGORY MONIZ; IDELL MONIZ;
RED ROCK FINANCIAL SERVICES,
LLC, WELLS FARGO BANK, N.A.;
GARDEN TERRACE HOMEOWNERS
ASSOCIATION,
        *Defendants*,

    and

BANK OF AMERICA, N.A.,
     *Defendant-Appellee*,

FEDERAL HOME LOAN MORTGAGE
CORPORATION; FEDERAL HOUSING
FINANCE AGENCY, as Conservator
for the Federal Home Loan
Mortgage Corporation,
    *Defendants-Counter-Claimants-*
          *Appellees.*

No. 16-15066

D.C. No.
2:15-cv-01186-
GMN-GWF

OPINION

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, Chief District Judge, Presiding

Argued and Submitted February 17, 2017
San Francisco, California

Filed August 25, 2017

Before:  Marsha S. Berzon and Richard R. Clifton, Circuit
Judges, and Kimberly J. Mueller,* District Judge.

Opinion by Judge Mueller

---

*The Honorable Kimberly J. Mueller, United States District Judge for
the Eastern District of California, sitting by designation.

## SUMMARY[**]

### Federal Foreclosure Bar

The panel affirmed the district court's summary judgment in favor of the Federal Home Loan Mortgage Corporation, or Freddie Mac, in a quiet title action brought by a plaintiff who purchased real property at a homeowners association foreclosure sale.

The plaintiff argued that the Nevada superpriority lien provision, Nev. Rev. Stat. § 116.3116, empowered the homeowners association to sell the property to him free of any other liens or interests, priority status aside. Freddie Mac is under Federal Housing Finance Agency conservatorship. The panel held that the Federal Foreclosure Bar's prohibition on nonconsensual foreclosure of Agency assets preempted Nevada law, invalidating any purported extinguishment of Freddie Mac's interest through the association foreclosure sale. First, the panel held that the Federal Foreclosure Bar applies to private association foreclosures generally, and does not protect the Agency's property only from state and local tax liens. The panel rejected the plaintiff's argument that the Federal Foreclosure Bar did not apply specifically to this case because Freddie Mac and the Agency implicitly consented to the foreclosure when they took no action to stop the sale.

In analyzing preemption, the panel began with a presumption against preemption because real estate foreclosure traditionally is an area regulated by state law.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the presumption was rebutted because Congress had made its intent to supersede state law clear and manifest. The panel concluded that the Federal Foreclosure Bar implicitly demonstrated a clear intent to preempt Nevada's superpriority lien law by expressly prohibiting foreclosures on Agency property without consent. Because the federal and state statutes impliedly conflicted, the Federal Foreclosure Bar superseded the Nevada superpriority lien provision.

The panel held that, under Nevada law, Freddie Mac proved that it held an enforceable property interest, and therefore was entitled to summary judgment even though the recording document listed the deed-of-trust beneficiary but not the note owner, Freddie Mac. The note was thus "split" from the deed of trust, but due to Freddie Mac's agency relationship with the recorded beneficiary, Freddie Mac remained a secured creditor with a property interest in the collateral.

## COUNSEL

Luis A. Ayon (argued), Maier Gutierrez Ayon, Las Vegas, Nevada; Michael V. Infuso and Keith W. Barlow, Green Infuso LLP, Las Vegas, Nevada; for Plaintiff-Counter-Defendant-Appellant.

Michael A.F. Johnson (argued), Matthew J. Oster, Elliott C. Mogul, Dirk C. Phillips, Asim Varma, and Howard N. Cayne, Arnold & Porter LLP, Washington, D.C.; Leslie Bryan Hart and John D. Tennert, Fennemore Craig P.C., Reno, Nevada; Darren T. Brenner, Akerman LLP, Las Vegas, Nevada; Marc James Ayers and R. Aaron Chastain, Bradley Arant Boult

Cummings LLP, Birmingham, Alabama; for Defendants-Counter-Claimants-Appellees.

**OPINION**

MUELLER, District Judge:

If a homeowners association member in Nevada misses property payments for six months, Nevada law equips the association with the ability to foreclose on a "superpriority lien," quashing all other property liens or interests recorded after the recordation of the Covenants, Conditions, and Restrictions attached to the title.  On its face, this superpriority lien has the potential to trump certain federal property interests, despite Congress's passage of a provision known as the Federal Foreclosure Bar, which prohibits nonconsensual foreclosure of Federal Housing Finance Agency ("Agency") assets.  This clash of state and federal law has spawned considerable litigation in Nevada.  This decision resolves the clash in favor of the Federal Foreclosure Bar.

Appellant Alex Berezovsky purchased a home at a homeowners association foreclosure sale in 2013.  He argues the Nevada superpriority lien provision empowered the association to sell the home to him free of any other liens or interests, priority status aside.  The Federal Home Loan Mortgage Corporation ("Freddie Mac") claims it has a priority interest in the home Berezovsky purchased.  Freddie Mac is under Agency conservatorship, meaning the Agency temporarily owns and controls Freddie Mac's assets.  The Federal Foreclosure Bar's prohibition on nonconsensual

foreclosure gives teeth to the Agency's statutory mandate to guard its conservatorship assets.

Berezovsky sued to quiet title in Nevada state court. Armed with the Federal Foreclosure Bar, Freddie Mac intervened and counterclaimed for the property's title, removed the case to federal district court, and moved for summary judgment. The Agency joined Freddie Mac's counterclaim. Together the federal entities argued that Berezovsky did not acquire "clean title" in the home because the Federal Foreclosure Bar preempts Nevada law, invalidating any purported extinguishment of Freddie Mac's interest through the association foreclosure sale. In resolving the parties' cross-motions, the district court agreed with the federal entities.

On appeal, Berezovsky disputes the Federal Foreclosure Bar's applicability and contends Freddie Mac lacks an enforceable property interest. We are unpersuaded and affirm the district court's holding.

I.

The home Berezovsky purchased is located in Las Vegas, Nevada. Gregory and Idell Moniz previously owned the home, which is located in a community governed by a homeowners association. On March 5, 2007, the Monizes took out a $220,000 loan secured by a deed of trust. The deed of trust listed the Monizes as the loan borrowers and named Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary under the security instrument, and as nominee for the lender, Countrywide Home Loans, Inc., and its successors and assigns. Freddie Mac purchased the Monizes' loan in 2007 and has owned it ever since. On

July 22, 2011, MERS assigned its beneficial interest under the deed of trust to Bank of America, N.A. ("BANA"), and BANA immediately recorded the assignment.

In early 2011, the Monizes missed $1,767.38 in payments they owed to the homeowners association. This lapse triggered Nevada's superpriority lien law, empowering the homeowners association to record a lien against the home, which it did on March 17, 2011. The association recorded a formal notice of default on May 9, 2013, and then exercised its power to foreclose on the home and extinguish all other property interests. Berezovsky acquired the home at the June 4, 2013, foreclosure sale for $10,500; he then recorded the deed in his name.

In his state action to quiet title, Berezovsky sued all those holding a property interest in the home, including the Monizes and BANA. Freddie Mac intervened, counterclaimed for title, removed the case to federal court, and moved for summary judgment. To establish its priority property interest under Nevada law, Freddie Mac produced evidence showing it had owned the Monizes' loan since 2007, and that BANA, the recorded deed-of-trust beneficiary, had been its loan-servicing agent.

The Agency also intervened as Freddie Mac's conservator and joined the summary judgment motion. *See* Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. §§ 4511, 4513 (empowering Agency to place entities like Freddie Mac into conservatorship to protect nation's housing market and participate in litigation toward same end). In placing Freddie Mac into conservatorship in 2008, the Agency acquired Freddie Mac's "rights, titles, powers, and privileges . . . with respect to [its] assets" for the life of the

conservatorship.    12 U.S.C. § 4617(b)(2)(A)(I).    The Agency's conservatorship assets are shielded from certain adverse actions as spelled out by statute. *See generally id.* § 4617.   The asset protection clause known as the Federal Foreclosure Bar[1] provides that "[n]o property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency." *Id.* § 4617(j)(3).   In this case, the Agency did not consent to the association's foreclosure of Freddie Mac's lien.   For this reason, the district court concluded, the Federal Foreclosure Bar supported granting summary judgment for Freddie Mac.

Berezovsky timely appealed.   He argues the Federal Foreclosure Bar does not apply and, even if it does, Freddie Mac lacks an enforceable property interest.   We review the district court's decision to grant summary judgment de novo. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009) (citing *Burrell v. McIlroy*, 464 F.3d 853, 855 (9th Cir. 2006)).

## II.

Berezovsky offers two reasons the Federal Foreclosure Bar does not apply.   He says (1) the Bar does not apply to private association foreclosures generally, because it protects the Agency's property only from state and local tax liens; and (2) it does not apply specifically to this foreclosure, because

---

[1] Nevada district courts consistently refer to the statutory bar in 12 U.S.C. § 4617(j)(3) as the "Federal Foreclosure Bar," a shorthand this opinion adopts. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. SFR Invs. Pool 1, LLC*, No. 2:14-cv-02046-JAD-PAL, 2015 WL 5723647, at *3 (D. Nev. Sept. 28, 2015).

Freddie Mac and the Agency implicitly consented to the foreclosure when they took no action to stop the sale.**²**

Whether the Federal Foreclosure Bar applies to private foreclosures generally is a matter of first impression. In answering the question, we turn first to the statute's structure and plain language. *See Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936, 941 (9th Cir. 2017). HERA identifies the powers granted to the Agency as a conservator and the exemptions from which it benefits. A subsection of the statute entitled "Other agency exemptions"**³** includes the Federal Foreclosure Bar as the third exemption, and provides as follows:

> (1) Applicability
>
>> The provisions of this subsection shall apply with respect to the Agency in any case in which the Agency is acting as a conservator or a receiver.

---

**²** Berezovsky also argues the Federal Foreclosure Bar violates due process because the statute "lack[s] procedures for notice to interested parties and procedures for any hearing." At oral argument, Berezovsky's counsel conceded his due process argument seeks to vindicate the association's property rights, not his own, and so he lacks standing to raise this argument. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

**³** The word "other" in this context refers back to the exception codified in a preceding subsection titled "Exempt tax status." *See* 12 U.S.C. § 4617(i)(5).

(2) Taxation

The Agency, including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Agency shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of the value of such property, and the tax thereon, shall be determined as of the period for which such tax is imposed.

(3) Property protection

No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency.

(4) Penalties and fines

The Agency shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording

tax or any recording or filing fees when
due.

12 U.S.C. § 4617(j).

On its face, the first provision makes clear that this subsection applies to "any case" in which the Agency serves as conservator, without limitation. *Id.* § 4617(j)(1). Congress expressly limited the second exemption to taxation under the plain language of the provision. *See id.* § 4617(j)(2) ("shall be exempt from all taxation," with specified exceptions). But the Federal Foreclosure Bar, titled "Property protection," is not so limited and does not expressly use the word "taxes" at all. *See id.* § 4617(j)(3). Notably, it does not limit "foreclosure" to a subset of foreclosure types. *Id.* The text of exemption four, titled "Penalties and fines," references taxes, negating agency liability for penalties or fines arising from unpaid property, probate, or recording taxes. *See id.* § 4617(j)(4). A plain reading of the statute discloses that the Federal Foreclosure Bar is not focused on or limited to tax liens. The text of subsection (j) omits taxation from the general applicability provision, identifies taxes in the second and fourth exemptions, and then again omits any reference to taxation in the third exemption, the Federal Foreclosure Bar. On its face, the Federal Foreclosure Bar applies to any property for which the Agency serves as conservator and immunizes such property from any foreclosure without Agency consent. *Id.* § 4617(j)(1), (3).

Berezovsky cites the Fifth Circuit's decision in *F.D.I.C. v. McFarland*, 243 F.3d 876 (5th Cir. 2001), to support his argument that the Federal Foreclosure Bar does not apply to private foreclosures. The court in *McFarland* interpreted 12 U.S.C. § 1825(b)(2), a provision of the Financial

Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") that governs Federal Deposit Insurance Corporation ("FDIC") receiverships. *See id.* at 885. The FIRREA provision is worded identically to HERA's Federal Foreclosure Bar except that the word "Corporation" appears in the former where "Agency" appears in the latter. *Compare* 12 U.S.C. § 1825(b)(2) *with* 12 U.S.C. § 4617(j)(3).[4]

The court in *McFarland* declined to extend § 1825(b)(2) to private foreclosures. *See* 243 F.3d at 885–86. In doing so, it considered the statutory framework in which § 1825(b)(2) appears. *See id.* Because that framework is distinguishable from the framework surrounding the Federal Foreclosure Bar, *McFarland* does not provide the answer in this case.

As the court in *McFarland* observed, before FIRREA's passage in 1989, § 1825 included only the provision currently codified as § 1825(a), exempting the FDIC from all taxation of any kind while it acted in its corporate capacity. *See id.* at 886 (citing 12 U.S.C. § 1825 (1988)). FIRREA added subsection (b), extending the exemption to the FDIC in its role as receiver. This legislative history demonstrates that the purpose of § 1825 is to extend the FDIC's general exemption from taxation to the receivership context. *See id*. The titles of the relevant section and subsection, *McFarland* noted, confirmed this conclusion. *See id.* Section 1825 is labeled "Exemption from taxation; limitations on borrowing." By adding the heading "General rule" to subsection (a), and

---

[4] Specifically, the FDIC provision reads as follows: "No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation." 12 U.S.C. § 1825(b)(2).

"Other exemptions" to subsection (b), Congress signaled that subsection 1825(b), which includes the property protection provision Berezovsky points to, was intended to address tax exemptions other than those set out in the "General rule." *See* 12 U.S.C. § 1825(b)(1)–(3); *McFarland*, 243 F.3d at 886. In contrast, the protection provided by the Federal Foreclosure Bar applicable here cannot fairly be read as limited to tax liens because, unlike § 1825, § 4617(j) includes no language limiting its general applicability provision to taxes alone.

Berezovsky also contends even if the Federal Foreclosure Bar applies to private association foreclosures generally, it does not apply to the sale at which he purchased the Monizes' home because Freddie Mac and the Agency implicitly consented to the foreclosure when they took no action to stop it. Berezovsky cites no authority for the proposition that inaction in this context conveys consent, implicit or otherwise. The Federal Foreclosure Bar does not require the Agency to actively resist foreclosure. *See* 12 U.S.C. § 4617(j)(3) (flatly providing that "[n]o property of the Agency shall be subject to . . . foreclosure, or sale without the consent of the Agency"). Rather, the statutory language cloaks Agency property with Congressional protection unless or until the Agency affirmatively relinquishes it. *Id.* Here, the Agency did not agree to forego its property interest.

The Federal Foreclosure Bar applies generally to private association foreclosures and specifically to the contested foreclosure sale here.

III.

The parties dispute whether the Federal Foreclosure Bar preempts Nevada state law. The district court found the

Federal Foreclosure Bar invalidated the homeowners association's use of a state-sanctioned superpriority lien to foreclose on the Agency's property without its consent. The inherent tension between the federal and state laws has triggered multiple lawsuits, the outcomes of which may depend on our resolution here.**[5]**

"The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Gonzales v. Raich*, 545 U.S. 1, 29 (2005). This is so even if the federal statutory language does not explicitly manifest Congress's preemptive intent. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 76–77 (2008) (internal citations omitted). Preemption arises when "compliance with both federal and state regulations is a physical impossibility, or . . . state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

---

**[5]** Every federal district court to face this preemption question has found § 4617(j)(3) preempts Nevada Revised Statutes section 116.3116, which enacts the superpriority lien. *See*, *e.g.*, *Fed. Home Loan Mortg. Corp. v. Donel*, No. 2:16-CV-176 JCM (PAL), 2017 WL 2692403, at *3 (D. Nev. June 21, 2017); *G & P Inv. Enters., LLC v. Wells Fargo Bank, N.A.*, 199 F. Supp. 3d 1266, 1269 (D. Nev. 2016); *Elmer v. Freddie Mac*, No. 14-01999, 2015 WL 4393051, at *3 (D. Nev. July 13, 2015); *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1159 (D. Nev. 2015), *appeal dismissed* (Feb. 2, 2016). Though these courts are unanimous on the preemption issue, a few courts have denied summary judgment in similar cases after finding, unlike here, Freddie Mac or Fannie Mae did not adequately establish a priority property interest. *See, e.g.*, *LN Mgmt., LLC Series 5664 Divot v. Kit Dansker*, No. 2:13-cv-01420-RCJ-GWF, 2017 WL 1380414, at *2 (D. Nev. Apr. 13, 2017) (finding a genuine issue of material fact as to whether the Agency owned the note and deed of trust at the time of sale); *Nationstar Mortg. LLC v. D'Andrea Cmty. Ass'n*, No. 3:15-cv-00377-RCJ-VPC, 2017 WL 58582, at *4 (D. Nev. Jan. 4, 2017) (same).

Congress." *Bank of Am. v. City & Cty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002) (internal citations and quotation marks omitted).

A court begins its preemption analysis by assessing whether the presumption against preemption applies. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("Consideration of issues arising under the Supremacy Clause start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.") (internal citation and quotation marks omitted); *see also California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989) ("[A]ppellees must overcome the presumption against finding pre-emption of state law in areas traditionally regulated by the States.") (citation omitted).

Real estate foreclosure traditionally is an area regulated by state law, so we begin our analysis with a presumption against pre-emption of the Nevada superpriority lien law. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 544 (1994); *In re Bledsoe*, 569 F.3d 1106, 1112 (9th Cir. 2009). The presumption against preemption is rebutted, however, where Congress makes its intent to supersede state law "clear and manifest." *See Arizona v. United States*, 567 U.S. 387, 400 (2012).

We assess first whether the Federal Foreclosure Bar demonstrates clear and manifest intent to preempt Nevada's superpriority lien provision through an express preemption clause and conclude it does not. Congress did not use sufficiently definite language to brand § 4617(j)(3) as expressly preemptive, although it unquestionably knows how to do so. *See, e.g.*, *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452,

458 (2012) (finding express preemption in 21 U.S.C. § 678's directive that any requirements "in addition to, or different than those made under [the Federal Meat Inspection Act] may not be imposed by any State"); *Perez v. Nidek Co.*, 711 F.3d 1109, 1117 (9th Cir. 2013) (finding express preemption in 21 U.S.C. § 360k(a)'s pronouncement that "no State . . . may establish or continue . . . any requirement . . . which is different from, or in addition to, any requirement applicable under this chapter").

The question, then, is whether the Federal Foreclosure Bar implicitly demonstrates a clear intent to preempt Nevada's superpriority lien law. We conclude it does. The Federal Foreclosure Bar's declaration that "[n]o property of the Agency shall be subject to . . . foreclosure" unequivocally expresses Congress's "clear and manifest" intent to supersede any contrary law, including state law, that would allow foreclosure of Agency property without its consent. Although the Federal Foreclosure Bar permits the Agency to consent to relinquish its interest in the face of an association's superpriority lien, the same Bar expressly prohibits foreclosures on Agency property without consent. Nevada law, in contrast, allows homeowners association foreclosures under the circumstances present in this case to automatically extinguish the Agency's property interest without the Agency's consent. *See* Nev. Rev. Stat. § 116.3116.**[6]**

---

**[6]** Section 116.3116, titled "Liens against units for assessments," provides as follows:

> 1.    The association has a lien on a unit for any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty,

assessment or fine becomes due. Unless the declaration otherwise provides, any penalties, fees, charges, late charges, fines and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3012 and any costs of collecting a past due obligation charged pursuant to NRS 116.310313 are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.

2. A lien under this section is prior to all other liens and encumbrances on a unit except:

(a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;

(b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent, except that a lien under this section is prior to a security interest described in this paragraph to the extent set forth in subsection 3;

(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative; and

(d) Liens for any fee or charge levied pursuant to subsection 1 of NRS 555.520.

Nev. Rev. Stat. § 116.3116. As the Nevada Supreme Court has explained, subsection 116.3116(2) "elevates the priority of the [homeowners association] lien over other liens," with some exceptions. *SFR Invest.*

Nevada's law is an obstacle to Congress's clear and manifest goal of protecting the Agency's assets in the face of multiple potential threats, including threats arising from state foreclosure law.

"[E]ven if it is possible to comply with both state and federal law, state law is conflict-preempted whenever it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) (quoting *Arizona*, 567 U.S. at 399). As the two statutes impliedly conflict, the Federal Foreclosure Bar supersedes the Nevada superpriority lien provision. The district court did not err in so concluding.

IV.

Berezovsky maintains that even if the Federal Foreclosure Bar applies to his case and is preemptive, the district court should not have granted summary judgment to Freddie Mac because Freddie Mac did not prove beyond dispute that it holds an enforceable property interest. Berezovsky faults Freddie Mac for never recording its interest, for "splitting" the note from the deed of trust, and for pointing to

*Pool 1*, 334 P.3d at 410. The exceptions clarify that the statute "splits [a homeowners association's] lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid [association] dues and maintenance and nuisance-abatement charges, is 'prior to' a first deed of trust. The subpriority piece, consisting of all other [homeowners association] fees or assessments, is subordinate to a first deed of trust." *Id.* at 411. In this case, the homeowners association's lien qualifies as superpriority as it covers dues not paid in early 2011, with the lien recorded within nine months, by March 2011.

insufficient evidence to establish its interest for purposes of summary judgment.

Here, we look to the Nevada Supreme Court's resolution of these issues. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Nevada law requires recording of a lien for it to be enforceable, but does not mandate that the recorded instrument identify the note owner by name. *See* Nev. Rev. Stat. § 106.210.[7] If the named beneficiary under the recorded deed of trust is someone other than the note owner, the recordation separates "the note and the security deed [and] creates a question of what entity would have authority to foreclose, but does not render either instrument void." *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 259 (Nev. 2012) (citation omitted).

The Nevada Supreme Court has relied on the Restatement Third of Property to clarify lien enforceability when the recording document lists the deed-of-trust beneficiary, here BANA, but not the note owner, here Freddie Mac. *See In re Montierth*, 354 P.3d 648, 650–51 (Nev. 2015) (citing Restatement (Third) of Property: Mortgages § 5.4 cmt. c (Am. Law. Inst. 1997)). Under these circumstances—that is, where the note is "split" from the deed of trust—an "agency relationship" with the recorded beneficiary preserves the note owner's power to enforce its interest under the security

---

[7] This recording provision provides in relevant part, "Any assignment of a mortgage of real property . . . and any assignment of the beneficial interest under a deed of trust must be recorded in the office of the recorder of the county in which the property is located . . . ." Nev. Rev. Stat. § 106.210.

instrument, because the note owner can direct the beneficiary to foreclose on its behalf. *See id*. An agency relationship exists if the note owner has the ability to reclaim the deed of trust from the beneficiary by ordering that the beneficiary make an assignment. *Id.* at 651.

Nevada law thus recognizes that, in an agency relationship, a note owner remains a secured creditor with a property interest in the collateral even if the recorded deed of trust names only the owner's agent. *Id*. (noting the Restatement (Third) of Property acknowledges the note holder retains its security interest even if the beneficial interest under the deed of trust is assigned to its loan-servicing agent).

Although the recorded deed of trust here omitted Freddie Mac's name, Freddie Mac's property interest is valid and enforceable under Nevada law. Freddie Mac introduced evidence[8] in the district court showing it acquired the Monizes' loan secured by the property in 2007; BANA is identified as Freddie Mac's loan servicer in those documents. Freddie Mac also introduced excerpts of its Single-Family Seller/Servicer Guide ("Guide"), which defines its agency

---

[8] Berezovsky's objection to the timeliness and admissibility of Freddie Mac's evidence is unavailing. Freddie Mac timely filed its evidence with its cross-motion for summary judgment, and Freddie Mac's database printouts are admissible business records. *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009). Although discovery had not yet opened, Berezovsky himself moved for summary judgment and agreed to the district court's resolving the motions without further discovery.

relationship with BANA.**[9]**  The Guide provides that when Freddie Mac purchases a mortgage, the "Servicer agree[s] Freddie Mac may, at any time and without limitation, require the [] Servicer, at the [] Servicer's expense, to make such endorsements to and assignments and recordations of any of the Mortgage documents so as to reflect the interests of Freddie Mac."  Guide at 1301.10.  The Guide also provides that "Freddie Mac may, at its sole discretion and at any time, require a Seller/Servicer, at the Seller/Servicer's expense, to prepare, execute and/or record assignments of the Security Instrument to Freddie Mac . . . ."  Guide at 6301.6.  The Guide's language mirrors *Montierth*'s description of the requisite agency relationship.  BANA is Freddie Mac's agent with respect to the Monizes' loan.  Freddie Mac's property interest is therefore valid and enforceable under Nevada law.

Berezovsky points to no evidence before the district court that created a material dispute regarding the legal import of Freddie Mac's exhibits concerning its interest in the property. He must have shown more than "metaphysical doubt as to the material facts" to warrant reversal, and has not done so here. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).  The district court correctly found Freddie Mac's priority property interest enforceable under Nevada law.

V.

Because Freddie Mac possessed an enforceable property interest and was under the Agency's conservatorship at the

---

**[9]** We take judicial notice of the Guide, which governs Freddie Mac's relationship with its servicers.  *See* Fed. Rule Evid. 201 (b), (d).  The Guide was properly before the District Court.

time of the homeowners association foreclosure sale, the Federal Foreclosure Bar served to protect the deed of trust from extinguishment. Freddie Mac continued to own the deed of trust and the note after the sale to Berezovsky. The district court properly granted summary judgment in favor of Freddie Mac.

**AFFIRMED.**