FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>SATICOY BAY LLC, SERIES 9229<br>MILLIKAN AVENUE; MILLIKAN<br>AVENUE TRUST,<br>*Defendants-Appellants*,<br><br>and<br><br>INDEPENDENCE II HOMEOWNERS'<br>ASSOCIATION,<br>*Defendant.* | No. 19-17043<br><br>D.C. No.<br>2:15-cv-02151-<br>JAD-NJK<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Submitted April 13, 2021[*]
Pasadena, California

Filed May 5, 2021

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  Richard A. Paez and Lawrence VanDyke, Circuit
Judges, and Sharon L. Gleason,[**] District Judge.

Opinion by Judge VanDyke

---

**SUMMARY**[***]

---

**Nevada Foreclosure Law**

The panel affirmed the district court's summary
judgment in favor of Nationstar Mortgage LLC in a diversity
action alleging claims arising from a nonjudicial foreclosure
by a homeowners' association ("HOA") on real property in
Nevada.

Fannie Mae purchased the loan, secured by a Deed of
Trust ("Deed"), on a home in Las Vegas, Nevada. The Deed
was eventually assigned to Bank of America, N.A.
("BANA"), and then to Nationstar. As a result of the
homeowners' failure to pay HOA dues, the HOA foreclosed
on the real property at issue. The buyer at the sale conveyed
the property to Saticoy Bay, LLC. Nationstar sued Saticoy
Bay to quiet title. The district court granted summary
judgment to Nationstar on the grounds that the Federal
Foreclosure Bar (prohibiting the foreclosure of Federal
Housing Finance Agency ("FHFA") property without

---

[**] The Honorable Sharon L. Gleason, United States District Judge
for the District of Alaska, sitting by designation.

[***] This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

FHFA's consent) prevented the extinguishment of Fannie Mae's Deed.

The panel rejected Saticoy's two threshold challenges, and held that Nationstar properly and timely raised its claims based on the Federal Foreclosure Bar.  Specifically, first, the panel held that Nationstar had standing to invoke the Federal Foreclosure Bar where Nationstar presented ample evidence of its servicing relationship with Fannie Mae.  This relationship, along with the authority Fannie Mae delegated to its loan servicers to protect Fannie Mae's mortgage loans, was more than sufficient to establish that Nationstar was Fannie Mae's loan servicer and had the authority to assert the Federal Foreclosure Bar in this case.  Second, Nationstar timely invoked the Federal Foreclosure Bar because Nationstar brought a quiet title action within the applicable six-year statute of limitations under 12 U.S.C. § 4617(b)(12)(A).

The panel held that the Federal Foreclosure Bar applied to the HOA foreclosure sale here.  First, Fannie Mae was, and remains, in FHFA conservatorship.  Second, Nationstar's evidence demonstrated Fannie Mae's ownership interest in the loan.  Third, Nationstar demonstrated its agency relationship with BANA at the time of the foreclosure sale.  The panel held that, contrary to Saticoy's argument, Nationstar did not need to specifically produce the Mortgage Selling and Servicing Contract to establish BANA's relationship with Fannie Mae – or its own servicing relationship with Fannie Mae – because the argument had been explicitly rejected by the Nevada Supreme Court.  The panel rejected Saticoy's argument that Nationstar's supporting declaration was defective because it was not based on "personal knowledge."  The panel also rejected, as foreclosed by binding precedent, Saticoy's

argument that Fannie Mae did not hold a valid ownership interest in the loan because Nationstar failed to produce a "signed writing" evincing such interest as required by the Nevada statute of frauds.  Given that Saticoy was not a party to the underlying loan agreement pursuant to which Fannie Mae acquired the loan, Saticoy could not raise the statute of frauds.  The panel also rejected Saticoy's contention that Fannie Mae did not comply with the "mandatory language" of the Nevada recording statutes, Nev. Rev. Stat. §§ 111.315 & 111.325.  It was sufficient that BANA, Fannie Mae's loan servicer and agent, was listed as the beneficiary on the recorded Deed at the time of the foreclosure sale.  Finally, the panel held that even if Nevada's bona fide purchaser statutes were implicated here, Saticoy's argument would still be doomed because it had constructive notice of Fannie Mae's interest in the Deed.  The panel concluded that Fannie Mae held an enforceable interest in the loan at the time of the HOA foreclosure sale, and the Federal Foreclosure applied to this case.

The panel held that the Federal Foreclosure Bar preempted the Nevada HOA law.  The panel noted that, as with most questions in this case, that this issue had already been clearly and repeatedly answered.  The panel rejected Saticoy's argument that because Nationstar had an adequate remedy at law, the district court inappropriately granted Nationstar equitable relief from the recitals in the foreclosure deed.  Assuming without deciding that the relief granted by the district court was indeed equitable in nature, the panel held that Saticoy failed to explain how, under Nevada law, monetary damages constituted an adequate remedy for loss of real property rights.

**COUNSEL**

Michael F. Bohn, Law Offices of Michael F. Bohn Esq. Ltd., Henderson, Nevada, for Defendants-Appellants.

R. Aaron Chastain and Benjamin W. Perry, Bradley Arant Boult Cummings LLP, Nashville, Tennessee, for Plaintiff-Appellee.

Leslie Bryan Hart and John D. Tennert III, Fennemore Craig P.C., Reno, Nevada; Asim Varma, Michael A.F. Johnson, and Dirk C. Phillips, Arnold & Porter Kaye Scholer LLP, Washington, D.C.; for Amicus Curiae Federal Housing Agency.

---

**OPINION**

VANDYKE, Circuit Judge:

As the saying goes, "there is nothing new under the sun." That may be true of these types of Nevada homeowners association (HOA) foreclosure lawsuits generally, given that hundreds of such cases have been filed and addressed by both state and federal courts. But it is *certainly* true of this case in particular, where the arguments espoused by Saticoy Bay LLC, Series 9229 Millikan Avenue (Saticoy) have all been foreclosed by Ninth Circuit and Nevada Supreme Court precedent. With a brooding sense of déjà vu all over again, we re-revisit the interaction of the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3), and Nevada state law, which establishes that in the event a homeowner fails to pay a certain portion of HOA dues, the HOA is authorized to foreclose on a "superpriority lien" in that amount, extinguishing all other liens and encumbrances on the

delinquent property recorded after the Covenants, Conditions, and Restrictions attached to the title. *See* Nev. Rev. Stat. § 116.3116 (Nevada HOA Law).

While Nevada law generally gives delinquent HOA dues superpriority over other lienholders, it does not take priority over federal law. And federal law, in the form of the Federal Foreclosure Bar, prohibits the foreclosure of Federal Housing Finance Agency (FHFA) property without FHFA's consent. 12 U.S.C. § 4617(j)(3). The Nevada HOA Law and the Federal Foreclosure Bar intersect, for example, when an HOA exercises its right under the Nevada HOA Law to foreclose on a property that is subject to a first deed of trust owned by the Federal National Mortgage Association (Fannie Mae). This is because when Fannie Mae was placed under FHFA's conservatorship in 2008, FHFA immediately succeeded to all rights in Fannie Mae's assets. *See* 12 U.S.C. § 4617(b)(2)(A)(i). As a result, FHFA now holds the rights to that first deed of trust—an asset of Fannie Mae's—and as such, the deed is now FHFA property and subject to the Federal Foreclosure Bar. Fannie Mae's involvement in the mortgage industry, the enactment of the Federal Foreclosure Bar, and the history of Fannie Mae going into conservatorship have all been well documented, so we decline to retread that ground here. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. SFR Invs. Pool 1, LLC*, 893 F.3d 1136, 1141–43 (9th Cir. 2018). But just like the questions presented, the answers here are not new. Therefore, we affirm the district court's grant of summary judgment to Nationstar Mortgage LLC (Nationstar).

## I.  FACTS & PROCEDURAL BACKGROUND

In 2005, Christopher Haberman and Renee Houston took out a $219,200 loan on their home in Las Vegas, Nevada. The deed of trust (the Deed) securing the $219,200 note was

recorded on February 25, 2005, and listed Countrywide Home Loans, Inc. as the lender and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and nominee for the lender and the lender's successors and assigns. Fannie Mae purchased the loan in March 2005. On October 28, 2010, MERS recorded an assignment of the Deed to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP (BAC).[1] BAC then merged into Bank of America, National Association (BANA) effective July 1, 2011.

As a result of the homeowners' failure to pay HOA dues, the Independence II Homeowners' Association ultimately foreclosed on the property and sold it to Millikan Avenue Trust at a foreclosure sale on October 5, 2012. In August 2013, BANA recorded an assignment of the Deed to Nationstar, and in September 2013, Millikan Avenue Trust conveyed the property to Saticoy. On November 11, 2015, Nationstar sued Saticoy seeking to quiet title and obtain a declaration that Fannie Mae's Deed was not extinguished by the HOA foreclosure sale. The district court granted summary judgment to Nationstar on the grounds that the Federal Foreclosure Bar prevented the extinguishment of Fannie Mae's Deed.

Saticoy appeals from this decision by the district court. We have jurisdiction under 28 U.S.C. § 1291, and we review the grant of summary judgment de novo. *See Berezovsky v. Moniz*, 869 F.3d 923, 927 (9th Cir. 2017).

---

[1] The record includes a second assignment of the Deed from MERS to BAC that was recorded on July 20, 2011. It is unclear why another assignment of the same import was made and recorded, but it only further supports the conclusion that BAC was the beneficiary under the Deed at the time of the foreclosure sale.

## II. ANALYSIS

### A. Nationstar properly and timely raised its claims based on the Federal Foreclosure Bar.

Saticoy asserts two threshold challenges: (1) that Nationstar lacks standing to invoke the Federal Foreclosure Bar, and (2) that Nationstar did not timely raise it.  But the Nevada Supreme Court has declared that "a loan servicer has standing to assert the Federal Foreclosure Bar on behalf of . . . Fannie Mae." *Daisy Tr. v. Wells Fargo Bank, N.A.*, 445 P.3d 846, 847 n.1 (Nev. 2019) (en banc).  And Nationstar presented ample evidence of its servicing relationship with Fannie Mae—including Fannie Mae business records, supported by a declaration from Mr. Curcio, an Assistant Vice President for Fannie Mae, identifying Nationstar as the current loan servicer.  This relationship, together with the authority Fannie Mae delegates to its loan servicers to protect Fannie Mae's mortgage loans,[2] was more than sufficient to establish that Nationstar was Fannie Mae's loan servicer and had the authority to assert the Federal Foreclosure Bar in this case. *See id*. at 850 (concluding that employee declarations confirming the current loan servicer, combined with the Federal Home Loan Mortgage Corporation (Freddie Mac) seller/servicer guide authorizing the loan servicer to "represent and defend Freddie Mac's interest in the applicable [m]ortgage(s)," gave the loan servicer standing to

---

[2] The Fannie Mae Single Family Servicing Guide defines the agency relationship between Fannie Mae and its loan servicers.  Under that guide, "[t]he servicer must . . . [a]ppropriately handle legal matters affecting Fannie Mae mortgage loans," including "[a]n attempt by another lienholder to . . . extinguish Fannie Mae's interests."

assert the Federal Foreclosure Bar (citing *Berezovsky*, 869 F.3d at 932–33)).

Nationstar also timely invoked the Federal Foreclosure Bar because Nationstar brought a quiet title action, arguing that the Deed had not been extinguished because of the Federal Foreclosure Bar, three years and one month after the HOA foreclosure sale, and the applicable statute of limitations is six years under 12 U.S.C. § 4617(b)(12)(A). *M & T Bank v. SFR Invs. Pool 1, LLC*, 963 F.3d 854, 856 (9th Cir. 2020), *cert. denied*, No. 20-908, 2021 WL 1602655 (U.S. Apr. 26, 2021).    Therefore, Saticoy's threshold arguments fail because they are foreclosed by established precedent.

## B. The Federal Foreclosure Bar applies to the HOA foreclosure sale here.

Saticoy makes several arguments related to whether the Federal Foreclosure Bar preserved Fannie Mae's Deed. Saticoy generally asserts that the foreclosure of the HOA's superpriority lien in accordance with the Nevada HOA Law extinguished the Deed before it was assigned to Nationstar. This argument fails if the Federal Foreclosure Bar applies *and* that Bar preempts Nevada state law.   The Federal Foreclosure Bar applies if, at the time of the foreclosure sale, (1) Fannie Mae was in FHFA conservatorship, *see Berezovsky*, 869 F.3d at 928; (2) Fannie Mae owned the Deed; and (3) Fannie Mae had an agency relationship with BANA (formerly BAC), the beneficiary of record on the Deed. *See id*. at 931–32.

With respect to the first factor, Fannie Mae was placed under FHFA's conservatorship on September 6, 2008, *Federal Home Loan Mortgage Corp.*, 893 F.3d at 1140, and remains there today. *See LN Mgmt., LLC Series 5664 Divot*

*v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 946 (9th Cir. 2020).  Regarding the second and third factors, Nationstar's evidence appropriately demonstrates both Fannie Mae's ownership interest in the loan and its agency relationship with BANA at the time of the foreclosure sale.  Specifically, Nationstar introduced Fannie Mae's business records—i.e., printouts from its internal database—and the supporting declaration from Mr. Curcio, showing that: (1) Fannie Mae acquired the loan on March 1, 2005, and continued to own it through the October 2012 HOA foreclosure sale, and (2) BANA served as Fannie Mae's loan servicer prior to transferring that responsibility to Nationstar on April 30, 2013.  In further support of the agency relationship between BANA and Fannie Mae, Nationstar presented excerpts of the Fannie Mae Single Family 2012 Servicing Guide (the Guide), which defined Fannie Mae's relationship with its loan servicers at the time of the foreclosure sale.  The Guide provides that when Fannie Mae purchases a mortgage, "Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary . . . including recordation of a mortgage assignment . . . from the servicer to Fannie Mae or its designee."  The Guide also gives BANA, as a loan servicer for Fannie Mae, certain authority to foreclose on the loan on Fannie Mae's behalf.

This court and the Nevada Supreme Court have previously concluded that for purposes of the Federal Foreclosure Bar, virtually identical evidence established both an enforceable property interest in the loan and an agency relationship with the loan servicer, which was identified as the beneficiary of record on the relevant deed. *See, e.g.*, *Berezovsky*, 869 F.3d at 932–33 & n.8 (noting that "Freddie Mac's database printouts [were] admissible business records" sufficient to support a "valid and enforceable" property interest under Nevada law and that

substantially similar language in Freddie Mac's servicer guide "mirrors *Montierth*'s description of the requisite agency relationship") (referencing *In re Montierth*, 354 P.3d 648, 650–51 (Nev. 2015) (en banc)); *see also Daisy Tr.*, 445 P.3d at 850–51.   Contrary to Saticoy's argument, Nationstar did not need to specifically produce the Mortgage Selling and Servicing Contract to establish BANA's agency relationship with Fannie Mae—or its own servicing relationship with Fannie Mae, for that matter.   This argument has been explicitly rejected by the Nevada Supreme Court. *See Daisy Tr.*, 445 P.3d at 849–50 (rejecting the argument that Freddie Mac must provide the "actual loan servicing agreement" to establish an agency relationship with the servicer and its own ownership interest).

Saticoy further argues that Nationstar's supporting declaration was defective because it was not based on "personal knowledge."   But Mr. Curcio, the declarant in Nationstar's declaration, permissibly based his testimony on his knowledge of Fannie Mae's recordkeeping system and the data contained in Fannie Mae's business records. *See, e.g.*, *id*. at 850.   Mr. Curcio could properly testify to the data entered into Fannie Mae's database, even though "he did not input each piece of data . . . . [because] there is no dispute that [Mr. Curcio] . . . was qualified to testify about the business practices and procedures for inputting the underlying data.   It is not necessary for each individual who entered a record . . . into the database to testify as to the accuracy of each piece of data entered."   *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1044 (9th Cir. 2009).

Saticoy also argues that Fannie Mae does not hold a valid ownership interest in the loan because Nationstar failed to produce a "signed writing" evincing such interest as required

by the Nevada statute of frauds. *See* Nev. Rev. Stat. § 111.205(1). That argument, too, is foreclosed by binding precedent. The Nevada Supreme Court has recognized that "[t]he defense of the statute of frauds is personal, and available only to the contracting parties or their successors in interest," *Harmon v. Tanner Motor Tours of Nevada, Ltd.*, 377 P.2d 622, 628 (Nev. 1963), and thus "cannot ordinarily be asserted by third persons." *Easton Bus. Opportunities, Inc. v. Town Exec. Suites-E. Marketplace, LLC*, 230 P.3d 827, 832 n.4 (Nev. 2010) (citation omitted). Given that Saticoy was not a party to the underlying loan agreement pursuant to which Fannie Mae acquired the loan, Saticoy cannot raise the statute of frauds. The fact that Fannie Mae completed such an acquisition more than fifteen years ago further undermines the applicability of the statute of frauds in this case. *See Edwards Indus., Inc. v. DTE/BTE, Inc.*, 923 P.2d 569, 574 (Nev. 1996) (per curiam) (explaining that "[f]ull performance by one party may also remove a contract from the statute of frauds"). We therefore reject this argument.

Saticoy further contends that Fannie Mae did not comply with the "mandatory language" of the Nevada recording statutes, Nev. Rev. Stat. §§ 111.315 & 111.325, and its failure to record its ownership of the Deed means that interest is void as to Saticoy under Nevada law. But Nevada's recording statutes do not require Fannie Mae to be identified as the beneficiary of record on the Deed in order to establish its ownership interest in the loan, *see Daisy Tr.*, 445 P.3d at 847, nor do they require Fannie Mae "to [otherwise] publicly record its ownership interest as a prerequisite for establishing that interest." *Id*. at 849. It was sufficient that BANA (formerly BAC), Fannie Mae's loan servicer and agent, was listed as the beneficiary on the recorded Deed at the time of the foreclosure sale. *See*

*Berezovsky*, 869 F.3d at 932.**[3]**   As a result, we—like the Nevada Supreme Court—"need not address [Saticoy's] argument that the Federal Foreclosure Bar [does not] preempt[] Nevada's recording statutes; nor is it necessary to address [Saticoy's] argument that it is protected as a bona fide purchaser from the Federal Foreclosure Bar's effect." *Daisy Tr.*, 445 P.3d at 849.

Even if we assumed, without deciding, that Nevada's bona fide purchaser statutes were implicated here, Saticoy's argument would still be doomed because it had constructive notice of Fannie Mae's interest in the Deed. *See Shadow Wood Homeowners Ass'n, Inc. v. N.Y. Cmty. Bancorp, Inc.*, 366 P.3d 1105, 1115 (Nev. 2016) (en banc) (reasoning that a "subsequent purchaser is bona fide . . . if it takes the property . . . without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry" (citation

---

**[3]** Here and elsewhere, Saticoy attempts to distinguish squarely on-point precedent by arguing that the controlling cases do not discuss the particular statute(s) invoked by Saticoy in this appeal.  For example, Saticoy claims that *Berezovsky* is inapposite because it does not "even mention[] the mandatory language in . . . [Nevada recording statute] NRS 111.315."  But the *Berezovsky* court did not need to enumerate all Nevada recording statutes in treatise-like fashion for its conclusion to be binding that "[a]lthough the recorded deed of trust here omitted Freddie Mac's name, Freddie Mac's property interest is valid . . . under Nevada law."  869 F.3d at 932.  Saticoy's repeated attempts to avoid on-point precedent merely by pointing to some statute or case that the precedent didn't expressly address is neither an appropriate nor helpful way to distinguish precedent.  A case whose holding is directly applicable may not be distinguished merely by pointing to some authority the case didn't expressly address.  The fact that a binding precedent failed to take some important authority into account may be a valid reason to ask that the case be reconsidered en banc; it is not a valid reason to ask us to ignore the case.

and quotation marks omitted)).  Saticoy had record notice of the adverse interest in the property, as reflected by the recorded Deed, and the fact that the note could be "sold one or more times without prior notice."  The first page of the Deed itself, and the first page of each rider thereto, also included a footer indicating Fannie Mae's possible involvement.  We thus decline to conclude that Saticoy is a bona fide purchaser based on the above evidence of Fannie Mae's potential interest in the property.  *See Huntington v. Mila, Inc.*, 75 P.3d 354, 356 (Nev. 2003) (per curiam) ("A subsequent purchaser with notice . . . of an interest in property superior to that which he is purchasing is not a purchaser in good faith, and is not entitled to the protection of [Nevada's] recording act.").

In conclusion, Fannie Mae held an enforceable interest in the loan at the time of the HOA foreclosure sale, as established by evidence of Fannie Mae's acquisition and continued ownership of the loan throughout that time and by evidence of its agency relationship with BANA (formerly BAC), the named beneficiary on the recorded Deed.  Fannie Mae's interest in the loan, coupled with the fact that it was under FHFA conservatorship at the time of the sale, means the Federal Foreclosure Bar applies to this case.

## C.  The Federal Foreclosure Bar preempts the Nevada HOA Law.

Having established that Fannie Mae owned the loan at the time of the sale, and that it was in FHFA conservatorship, the final question is whether the Federal Foreclosure Bar preempts the Nevada HOA law.  As with most questions in this case, that too has already been clearly and repeatedly answered:  "The Federal Foreclosure Bar preempts the Nevada superpriority lien scheme."  *M & T Bank*, 963 F.3d at 856 (citing *Berezovsky*, 869 F.3d at 931); *see also Saticoy*

*Bay LLC Series 9641 Christine View v. Fed. Nat'l Mortg. Ass'n*, 417 P.3d 363, 368 (Nev. 2018) (en banc) ("[T]he Federal Foreclosure Bar implicitly preempts [the Nevada HOA Law] to the extent that a foreclosure sale extinguishes the deed of trust."). The Federal Foreclosure Bar therefore preserved Fannie Mae's Deed, unless FHFA consented to the HOA sale. *See* 12 U.S.C. § 4617(j)(3). Saticoy presents no evidence that FHFA affirmatively consented; FHFA denies that it did; and Saticoy, although it argues FHFA's consent should be implied, "cites no authority for the proposition that [FHFA] inaction in this context conveys consent, implicit or otherwise." *Berezovsky*, 869 F.3d at 929; *see also Saticoy Bay LLC Series 9641 Christine View*, 417 P.3d at 368 ("Saticoy Bay argues that the FHFA implicitly consented to the extinguishment of Fannie Mae's deed of trust during the foreclosure sale by failing to act. We disagree.").

Saticoy finally argues that because Nationstar had an adequate remedy at law, the district court inappropriately granted Nationstar equitable relief from the recitals in the foreclosure deed, namely the default recital. Even assuming, without deciding, that the relief granted by the district court was indeed equitable in nature, Saticoy fails to explain how, under Nevada law, monetary damages constitute an adequate remedy for loss of real property rights. *See, e.g.*, *Dixon v. Thatcher*, 742 P.2d 1029, 1030 (Nev. 1987) (per curiam) (reasoning that "real property and its attributes are considered unique and loss of real property rights generally results in irreparable harm"); *Nev. Escrow Serv., Inc. v. Crockett*, 533 P.2d 471, 472 (Nev. 1975) (per curiam) (reversing the trial court's denial of a preliminary injunction to halt foreclosure on properties because, unlike the trial court—which concluded that "there existed an adequate remedy at law, to wit, money damages"—the Nevada

Supreme Court determined "[i]n this instance the equitable remedy is so far superior that the legal remedy may be rendered inadequate").[4]

## III. CONCLUSION[5]

For the reasons above, we **AFFIRM** the district court's grant of summary judgment to Nationstar.[6]

---

[4] We need not reach Nationstar's alternative excuse of tender arguments because Fannie Mae's Deed was not extinguished as a result of the application of the Federal Foreclosure Bar. That was the basis for the district court's decision and is the basis for our decision here.

[5] As this court has acknowledged on multiple occasions, most of Saticoy's arguments are clearly foreclosed by Ninth Circuit and Nevada Supreme Court decisions directly on point. *See, e.g.*, *Berezovsky*, 869 F.3d at 931 (concluding the Federal Foreclosure Bar preempts the Nevada HOA Law); *Daisy Tr.*, 445 P.3d at 847 (same). Yet Saticoy continues to raise these arguments in superficially different forms. *See generally Bank of Am., N.A. v. Los Prados Cmty. Ass'n*, No. 20-15582, 2021 WL 1157924 (9th Cir. Mar. 26, 2021); *Fed. Nat'l Mortg. Ass'n v. Casa Mesa Villas Homeowners Ass'n*, 839 F. App'x 45 (9th Cir. 2020); *Saticoy Bay LLC Series 452 Crocus Hill v. Quality Loan Serv. Corp.*, 826 F. App'x 610 (9th Cir. 2020). We again warn Saticoy not to pursue frivolous appeals. *See Alessi & Koenig, LLC v. Saticoy Bay LLC Series 10250 Sun Dusk LN*, 804 F. App'x 475, 477–78 (9th Cir. 2020) ("[W]e note that Saticoy previously made many of the same arguments in [a 2017 action]—and this court rejected them. Indeed, this court has repeatedly rejected these same arguments in other cases. [collecting cases]. Saticoy has other appeals pending before this court advancing these same, explicitly rejected arguments. The court cautions Saticoy against pursuing non-meritorious appeals."). Simultaneous with the filing of this opinion, we also issue an order to show cause why Saticoy and its counsel should not be sanctioned for these practices.

[6] Saticoy's Motion to Stay the Appeal (ECF No. 51) is **DENIED**.