**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION; FEDERAL HOUSING FINANCE AGENCY, As Conservator of Freddie Mac; FEDERAL NATIONAL MORTGAGE ASSOCIATION, *Plaintiffs-Appellees*, <br><br> v. <br><br> SFR INVESTMENTS POOL 1, LLC, *Defendant-Appellant*, <br><br> and <br><br> NEVADA NEW BUILDS, LLC; LAS VEGAS DEVELOPMENT GROUP, LLC, *Defendants*. | No. 16-15962 <br><br> D.C. No. 2:15-cv-01338-GMN-CWH <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, Chief Judge, Presiding

Argued and Submitted April 11, 2018
San Francisco, California

Filed June 25, 2018

Before:  M. Margaret McKeown and Kim McLane
Wardlaw, Circuit Judges, and Gary S. Katzmann,[*] Judge.

Opinion by Judge Katzmann

**SUMMARY**[**]

**Housing and Economic Recovery Act**

The panel affirmed the district court's summary judgment in favor of the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Housing Finance Agency ("FHFA") in their action seeking declaratory relief regarding foreclosures under Nev. Rev. Stat. § 116.3116, which grants homeowners' associations superpriority liens on real property under certain circumstances.

Nevada homeowners' associations ("HOAs") sold five properties to defendant SFR Investments Pool 1, Inc., following foreclosures on liens for unpaid HOA dues. Fannie Mae and Freddie Mac had purchased mortgage loans on the properties and had securitized the loans. Fannie Mae and Freddie Mac had subsequently been placed under the conservatorship of FHFA pursuant to the Housing and Economic Recovery Act of 2008 ("HERA"). FHFA did not

---

[*] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

consent to the HOA foreclosure sales of the properties to SFR.

The Nevada Foreclosure Statute, § 116.3116, provides that foreclosure on an HOA superpriority lien quashes all other property liens or interests recorded after the recordation of the covenants, conditions, and restrictions attached to the property's title.

The panel held that under HERA, FHFA succeeded to Fannie Mae and Freddie Mac's securitized mortgage loans, which were held in trust, upon inception of conservatorship. Accordingly, FHFA, as conservator, possessed enforceable interests in the properties at the time of the HOA foreclosure sales. The Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3), therefore applied. The Federal Foreclosure Bar, a part of HERA, provides that the property of an entity in FHFA conservatorship is not subject to foreclosure without the consent of FHFA.

The panel held that under *Berezovsky v. Moniz*, 869 F.3d 923 (9th Cir. 2017), the Federal Foreclosure Bar preempts the Nevada Foreclosure Statute to the extent that an HOA's foreclosure of its superpriority lien cannot extinguish a property interest of Fannie Mae or Freddie Mac while under FHFA conservatorship. Accordingly, the HOA foreclosure sales on the properties did not extinguish Fannie Mae and Freddie Mac's interests in the properties and thus did not convey the properties free and clear of their deeds of trust to SFR.

The panel further held that FHFA did not deprive SFR of a property right without due process because (1) Nevada law did not provide SFR with a constitutionally protected property interest in purchasing the houses with free and clear

title, and (2) assuming a protected property interest, SFR was not deprived of that interest without adequate procedural protections.

## COUNSEL

Karen L. Hanks (argued), Jesse N. Panoff, Diana Cline Ebron, Jacqueline A. Gilbert, and Howard C. Kim, Kim Gilbert Ebron, Las Vegas, Nevada; for Defendant-Appellant.

Michael A.F. Johnson (argued), Matthew J. Oster, Elliott C. Mogul, Dirk C. Phillips, Asim Varma, and Howard N. Cayne, Arnold & Porter Kaye Scholer LLP, Washington, D.C.; John D. Tennert III and Leslie Bryan Hart, Fennemore Craig P.C., Reno, Nevada; Michael W. Stark, Tennille J. Checkovich, and John H. Maddock III, McGuireWoods LLP, Richmond, Virginia; Robin E. Perkins and Amy Sorenson, Snell & Wilmer, Salt Lake City, Utah; for Plaintiffs-Appellees.

**OPINION**

KATZMANN, Judge:

The economic downturn following the subprime mortgage crisis of 2007 pushed to near default two government-sponsored enterprises that were heavily exposed to the housing market. The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac," collectively, with Fannie Mae, "the Enterprises") suffered a severe drop in the value of their mortgage portfolios, which previously comprised nearly half of the United States mortgage market and totaled approximately $5 trillion. In response, the United States government deployed numerous measures to keep the Enterprises afloat and combat further systemic breakdown in the financial and housing markets. Among those was Congress' passage of the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (codified as amended at 12 U.S.C. § 4511 et seq.). HERA established an independent agency known as the Federal Housing Finance Agency ("FHFA" or "the Agency") to be the regulator of the Enterprises and the twelve Federal Home Loan Banks. Exercising a power provided by that statute, on September 6, 2008, FHFA's Director placed the Enterprises under the Agency's conservatorship.

This case concerns several provisions of HERA, and poses the following questions: can FHFA, as conservator, "succeed to" ownership of the mortgages that were securitized by the Enterprises pursuant to 12 U.S.C. § 4617(b)(2)(A), when those mortgages are also "held in trust"? Does 12 U.S.C. § 4617(j)(3) ("Federal Foreclosure Bar"), which provides that property of an entity in FHFA conservatorship is not "subject to . . . foreclosure . . . without

the consent of the Agency," preempt a Nevada statute, Nev. Rev. Stat. § 116.3116 ("Nevada Foreclosure Statute"), that grants homeowners' associations superpriority liens on real property under certain circumstances? Further, if FHFA has not consented to a non-judicial foreclosure sale of a property in which an entity in conservatorship holds an interest, and seeks quiet title in that property subsequent to the sale, has FHFA thereby deprived the property buyer of due process?

Defendant SFR Investments Pool 1, Inc. ("SFR") owns several pieces of real property in Nevada. Five of them ("the Properties") are at issue in this case. The Properties were sold to SFR by Nevada homeowners' associations ("HOAs") following foreclosures on liens for unpaid association dues. Plaintiffs FHFA and the Enterprises sued SFR in the United States District Court for the District of Nevada, seeking a declaration that "12 U.S.C. § 4617(j)(3) preempts any Nevada law that would permit a foreclosure on a superiority lien to extinguish a property interest of Fannie Mae or Freddie Mac while they are under FHFA's conservatorship," that "the HOA Sale did not extinguish the Enterprises' interest in the Properties and thus did not convey the Properties free and clear to any Defendants," and that "title to the Properties is quieted in either Fannie Mae's or Freddie Mac's favor insofar as the Defendants' interest, if any, is subject to the interest of the Enterprises or, if applicable, the interest of the Enterprises' successors." The district court granted Plaintiffs' Motion for Summary Judgment, and denied SFR's Motion to Dismiss. SFR timely appealed. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The facts relevant to the instant proceeding were recited by the district court in its opinion, and are not challenged by either party.

**The Properties and the Mortgage Loans they Secure**

Four of the Properties are located in Las Vegas, Nevada, and the fifth is located in Henderson, Nevada. Each of the Properties is located in a different HOA community. The Properties' original owners had mortgage loans on their respective homes. Those loans were secured by the homes. Either Fannie Mae or Freddie Mac purchased the mortgage loans in 2006, and the respective Enterprise has retained ownership since. Each loan is evidenced by a promissory note and a deed of trust, both of which came into the respective Enterprise's possession upon purchase of the mortgage loan.

**The Enterprises and Securitized Mortgage Loans**

"Congress created Fannie Mae (the Federal National Mortgage Association) and Freddie Mac (the Federal Home Loan Mortgage Corporation) to foster the secondary market for home mortgages." *City of Spokane v. Fed. Nat. Mortg. Ass'n*, 775 F.3d 1113, 1114 (9th Cir. 2014). The Enterprises do not themselves originate loans in the primary market, and their charters permit only secondary market functions. *See* Federal National Mortgage Association Charter Act, 68 Stat. 612 (1954) (codified as amended at 12 U.S.C. § 1716 et seq.) (reestablishing Fannie Mae as a mixed public-private corporation); Emergency Home Finance Act of 1970, Pub. L. No. 91-351, 84 Stat. 450 (codified as amended at 12 U.S.C. § 1451 et seq.) (chartering Freddie Mac); *see generally Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 599–601 (D.C. Cir. 2017) (explaining history and purpose of the Enterprises); *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553 (2017) (providing history of Fannie Mae's evolution from public agency to private government-sponsored entity). Essentially, the Enterprises exist in order to facilitate liquidity in the mortgage loan market, and thereby distribute

the investment capital available for residential mortgage financing. *City of Spokane*, 775 F.3d at 1116; 12 U.S.C. §§ 1451, 1716; *see Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 105 (2d Cir. 2017).

In the secondary mortgage market, existing mortgage loans are bought, sold, and securitized. *Perry Capital*, 864 F.3d at 599. The Enterprises thus continually purchase residential mortgage loans secured by property throughout the nation, and securitize those mortgage loans. *Id.*; *see Lightfoot*, 137 S. Ct. at 557.

To securitize mortgage loans, and thereby create mortgage-backed securities, the Enterprises place the purchased loans they own into pools and issue certificates entitling the certificate-holders to a contractually specified share of payments borrowers make. *Herron v. Fannie Mae*, 861 F.3d 160, 163 (D.C. Cir. 2017); *Nomura Holding*, 873 F.3d at 105. The Enterprises customarily perform this securitization by placing mortgage loans into common-law trusts, of which the relevant Enterprise is the trustee.

**Passage of HERA and Relevant Provisions**

From 2007 through 2008, housing prices fell rapidly as the subprime mortgage and financial crises developed. Meanwhile, interest rates on adjustable-rate mortgages rose. These factors, along with an overabundance of subprime mortgage lending and shoddy underwriting practices, resulted in a glut of homeowners who could not make their mortgage loan payments. Defaulting on mortgage loans thus became an attractive option for many homeowners. Each default and resulting foreclosure sale depressed the prices of nearby homes, promoting a vicious downward spiral in the

housing market.  *See Nomura Holding*, 873 F.3d at 106–08 (providing a history of the housing and financial crises).

During the 2000s, the Enterprises, as major players in the United States housing market, purchased these risky mortgage loans, and thus exposed themselves to the eventual downturn in the housing market.  *Herron*, 861 F.3d at 163. Overall, in the lead up to 2008, the Enterprises' mortgage portfolios had a combined value of $5 trillion and accounted for nearly half of the United States mortgage market.  *Perry Capital*, 864 F.3d at 599.  The Enterprises subsequently suffered a severe drop in the value of their mortgage portfolios and were pushed to the brink of default.  *Id.*; *Herron*, 861 F.3d at 163.

As noted, Congress, concerned for the Enterprises' financial condition and that their default would imperil the ailing national economy, passed HERA, which became law in July 2008. *See Nomura Holding*, 873 F.3d at 108; *Perry Capital*, 864 F.3d at 599.  Several HERA subsections are immediate to the issues in this case.  HERA established FHFA as the Enterprises' regulator under § 4511(a)–(c). Section 4617(a)(2) authorizes FHFA to place the Enterprises into conservatorship "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs."

Section 4617(b) covers "Powers and duties of the Agency as conservator or receiver."  Section 4617(b)(2) refers to "General powers."  Relevant here, § 4617(b)(2)(A) provides that FHFA "shall, as conservator or receiver, and by operation of law, immediately succeed to . . . all rights, titles, powers, and privileges of the regulated entity . . . with respect to [its] assets."

Next, § 4617(b)(19) covers "General exceptions."  As relevant to the parties' arguments here, § 4617(b)(19)(B)(i)

specifies that "[a]ny mortgage . . . held in trust . . . by a regulated entity for the benefit of any person other than the regulated entity shall not be available to satisfy the claims of creditors generally, except that nothing in this clause shall be construed to expand or otherwise affect the authority of any regulated entity." The following provision, § 4617(b)(19)(B)(ii), explains that mortgages held in trust "shall be held by the conservator . . . for the beneficial owners of such mortgage . . . in accordance with the terms of the agreement creating such trust." Next, § 4617(b)(19)(B)(iii) states that "[t]he liability of the conservator . . . for damages shall, in the case of any contingent or unliquidated claim relating to the mortgages held in trust, be estimated in accordance with the regulations of the [FHFA] Director."

Finally, § 4617(j) covers "Other Agency exemptions." Specifically, the Federal Foreclosure Bar, § 4617(j)(3), titled "Property protection," states that "No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency."

In September 2008, as noted, FHFA's Director placed Fannie Mae and Freddie Mac into conservatorship, pursuant to § 4617(a)(2), where they remain today.

**The Nevada Foreclosure Statute and the HOA Foreclosure Sales**

The Nevada Foreclosure Statute gives an HOA a superpriority lien on a homeowner's property for a limited

amount of unpaid HOA dues. *See* NRS § 116.3116(2).[1] Under this section, a superpriority lien "is prior to all other liens and encumbrances" and "all [other] security interests," with certain exceptions and guidelines. *Id.* at (2)–(3). Foreclosure on a superpriority lien quashes all other property liens or interests recorded after the recordation of the Covenants, Conditions, and Restrictions attached to the property's title. *Berezovsky v. Moniz*, 869 F.3d 923, 925 (9th Cir. 2017). In the case before us, the original owners of the Properties became delinquent on their homeowners' associations' dues. The HOAs thus imposed liens on their

---

[1] NRS § 116.3116(2) provides that

> A lien under this section is prior to all other liens and encumbrances on a unit except:
>
> > (a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;
> >
> > (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent, except that a lien under this section is prior to a security interest described in this paragraph to the extent set forth in subsection 3;
> >
> > (c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative; and
> >
> > (d) Liens for any fee or charge levied pursuant to subsection 1 of NRS 444.520.

respective Properties for the outstanding balance of HOA dues, and ultimately foreclosed upon the liens on the Properties. SFR purchased each of the Properties at an HOA foreclosure sale in either 2012, 2013, or 2014.

**Procedural History**

FHFA and the Enterprises asserted claims against SFR seeking declaratory relief, quiet title, and a permanent injunction, and moved for summary judgment on December 18, 2015, after having filed an amended complaint on October 1, 2015. In lieu of filing an answer to FHFA's complaint, SFR moved to dismiss on October 23, 2015. On May 2, 2016, the district court denied SFR's motion to dismiss, and granted FHFA's motion for summary judgment. In granting summary judgment, the district court ruled that

> [The Federal Foreclosure Bar] preempts [the Nevada Foreclosure Statute, NRS] § 116.3116 to the extent that a[n HOA's] foreclosure of its super-priority lien cannot extinguish a property interest of [the Enterprises] while those entities are under FHFA's conservatorship. Accordingly, the HOA foreclosure sales on the Properties did not extinguish Fannie Mae's or Freddie Mac's interests in the Properties and thus did not convey the Properties free and clear of their deeds of trusts to SFR. Moreover, title to the Properties is quieted in either Fannie Mae's or Freddie Mac's favor insofar as SFR's interest, if any, is subject to the interest of Fannie Mae or Freddie Mac or, if

applicable, the interest of Fannie Mae's or Freddie Mac's successors.[2]

Judgment was entered May 4, 2016.   SFR timely appealed on May 27, 2016.

## STANDARDS OF REVIEW

We review a district court's grant of summary judgment de novo and apply the same standard of review as the district court under Federal Rule of Civil Procedure 56. *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016), *cert. denied sub nom.  City of San Gabriel, Cal. v. Flores*, 137 S. Ct. 2117 (2017).   Under Rule 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The district court's denial of a motion to dismiss is

---

[2] The district court premised much of its decision in this case on the reasoning of its prior opinion, *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145 (D. Nev. 2015).   The court noted that in *Skylights*, it held the plain language of § 4617(j)(3) prohibits property of FHFA from being subject to foreclosure without its consent.   *See Skylights*, 112 F. Supp. 3d at 1159.   In the instant matter, the district court found that FHFA, as conservator for the Enterprises, held an interest in the Properties prior to the HOA foreclosure sales.   Accordingly, the court determined that the Federal Foreclosure Bar, § 4617(j)(3), "prevents the HOA's foreclosure on the Properties from extinguishing the deeds of trust in the Properties." As to SFR's motion to dismiss, which the district court characterized as "rais[ing] many objections to the application of section 4617(j)(3), which primarily relate to due process violations," the court likewise referred to *Skylights*, noting that in that opinion, it had "address[ed] many objections related to, inter alia, preemption and due process violations."   The district court found "no reason to overturn its prior holding in Skylights," and denied SFR's motion to dismiss.

also reviewed de novo. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

## DISCUSSION

### A. Whether FHFA can "Succeed to" Mortgages that were "Held in Trust" by an Enterprise.

HERA mandates that FHFA shall "succeed to" Enterprise assets. 12 U.S.C. § 4617(b)(2)(A)(i). SFR argues that FHFA did not "succeed to" the mortgages at issue in this case because they were instead "held in trust" by FHFA pursuant to § 4617(b)(19)(B). SFR contends that the "General Exceptions" found under § 4617(b)(19) apply directly to the "General Powers" found under § 4617(b)(2), because both are labeled "General" and are structurally linked. SFR further argues that FHFA cannot "succeed to" "Mortgages held in trust," because Congress omitted the phrase "shall succeed to" from 4617(b)(19)(B), the provision covering "Mortgages held in trust," and instead used the phrase "shall be held by." Much of SFR's remaining argument restates this statutory construction and emphasizes the dominance of the verb "held" in § 4617(b)(19)(B)(i)–(iii), while emphasizing the absence of the phraseology "succeed to." In sum, SFR argues that FHFA did not, and could not, "succeed to" the mortgages at issue here, and thus the Federal Foreclosure Bar, § 4617(j)(3), neither applies nor preempts the Nevada Foreclosure Statute.[3]

---

[3] An unpublished opinion postdating the district court's proceedings in this case squarely addressed this issue. *See Elmer v. JPMorgan Chase & Co.*, 707 F. App'x 426, 428–29 (9th Cir. 2017) (unpublished). Amicus curiae argued that any mortgage held in trust pursuant to § 4617(b)(19)(B) is not Freddie Mac's asset, and therefore does not constitute an interest to which FHFA succeeded. *Id.* Though noting that

We conclude that SFR's textual arguments lack merit. As noted *supra*, FHFA's right of succession appears under § 4617(b)(2), "General Powers," in § 4617(b)(2)(A)(i): "The Agency shall, as conservator or receiver, and by operation of law, immediately succeed to all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity[.]"        Section        4617(b)(19)        contains        "General Exceptions," and § 4617(b)(19)(B) covers "Mortgages held in trust."   Section 4617(b)(19)(B)(i) specifies that "[a]ny mortgage . . . held in trust . . . by a regulated entity for the benefit of any person other than the regulated entity shall not be available to satisfy the claims of creditors generally." Subsection (ii) explains that mortgages held in trust "shall be held by the conservator . . . for the beneficial owners of such mortgage . . . in accordance with the terms of the agreement creating such trust."   12 U.S.C. § 4617(b)(19)(B)(ii). The following subsection (iii) directs FHFA to "estimate[]" any "contingent or unliquidated claim relating to the mortgages held in trust" according to "regulations of the [FHFA] Director."   *Id.* § 4617(b)(19)(B)(iii).

The plain text of these provisions does not state or imply that FHFA may either "succeed to" mortgages or "h[o]ld [them] in trust," rather than perform *both* of these actions in regard    to    a    securitized    mortgage    loan.        Section 4617(b)(19)(B)        nowhere        disallows        FHFA        from

---

we generally do "not consider on appeal an issue raised only by an amicus," *United States v. Gementera*, 379 F.3d 596, 607 (9th Cir. 2004), we nevertheless rejected Amicus' argument, stating: "The plain language of the section [12 U.S.C. § 4617(b)(19)(B)] cited by [amicus curiae] prohibits creditors from drawing on assets held in trust to satisfy creditors' claims; it does not bar the Agency from succeeding to Freddie Mac's interest in the assets."   *Elmer*, 707 F. App'x at 429.

"succeed[ing] to" mortgages held it trust.  Subsection (i) merely contains the general ban on liquidation of securitized mortgages "held in trust" to satisfy the claims of general creditors.  Meanwhile, subsection (ii) clarifies that FHFA shall continue to hold and manage those securitized mortgages for their various beneficial owners pursuant to the contractual arrangement underlying the relevant securitization pool, originally established with one of the Enterprises.  This provision offers assurances to purchasers of mortgage-backed security certificates, who pay a lump sum in exchange for a certificate representing the right to a future stream of income from the mortgage loans' principal and income payments.  *See Nomura Holding*, 873 F.3d at 100.  Subsection (iii) additionally permits FHFA to promulgate reasonable regulations to cabin the damages available on claims relating to the securitized mortgages held in trust.  Thus, it is patent that § 4617(b)(19)(B) confers *additional* protections upon the Enterprises' securitized mortgage loans, which FHFA succeeds to pursuant to § 4617(b)(2)(A)(i).  *See* 12 U.S.C. § 4617(b)(19)(B)(i)–(iii).

Since the statutory protection from creditors effected by § 4617(b)(19)(B) does not prevent FHFA from "succeed[ing] to" the Enterprises' securitized mortgage loans upon inception of conservatorship, that protection complements the bar on nonconsensual foreclosure and sale of FHFA property imposed by the Federal Foreclosure Bar, § 4617(j)(3).  SFR's reading necessitates that the conservator of the Enterprises would not succeed to securitized mortgage loans that are integral to the Enterprises' Congressionally-chartered function.  Indeed, though asserting that Congress' structural decisions in drafting HERA evince intent to exempt mortgages held in trust from succession, SFR fails to articulate *why* Congress would make such a decision.  By contrast, justifications for

FHFA's reading are readily apparent. Mortgage-backed securities are financial instruments central to the Enterprises' collective function as secondary mortgage market-maker. FHFA, as conservator, would normally be able to liquidate any asset belonging to the Enterprises in order to fulfill the claims of general creditors. However, when the Enterprises were placed into conservatorship at the height of the subprime mortgage crisis, their mortgage portfolios constituted nearly half of the United States mortgage market and were freefalling in value. *See Perry Capital*, 864 F.3d at 599; *see also Herron*, 861 F.3d at 163. Accordingly, Congress provided that the mortgage loans backing mortgage-backed securities would receive additional safeguards in order to combat further systemic breakdown in the American housing market. Thus, § 4617(b)(19)(B) prevents FHFA from liquidating those securitized mortgage loans in order to fulfill the claims of general creditors, protects certificate holders, and grants FHFA some control over related damages.

In sum, HERA's plain text permits FHFA to "succeed to" securitized mortgage loans, which are held in trust, pursuant to § 4617(b)(2)(A)(i), and we see no reason to inject a rule to the contrary into the statute.

## B. Whether the Federal Foreclosure Bar Preempts the Nevada Foreclosure Statute.

SFR contends that the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3), does not preempt the Nevada Foreclosure Statute. First, SFR argues that the Federal Foreclosure Bar is unconstitutional because it lacks a process to request consent or an opportunity to contest FHFA's decision not to consent to a foreclosure sale. Second, SFR argues that the Federal Foreclosure Bar does not expressly displace state law, nor explicitly manifest Congress' intent

to do so.  *See Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1022 (9th Cir. 2013).

SFR's arguments lack merit.  "The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail." *Gonzales v. Raich*, 545 U.S. 1, 29 (2005); *see* U.S. Const. art. VI, cl. 2. We squarely addressed the preemption issue before us now in *Berezovsky*, 869 F.3d at 930, a decision postdating the district court's proceedings in this case.  In *Berezovsky*, we held that "the Federal Foreclosure Bar implicitly demonstrates a clear intent to preempt Nevada's superpriority lien law. . . . As the two statutes impliedly conflict, the Federal Foreclosure Bar supersedes the Nevada superpriority lien provision."[4]  869 F.3d at 930–31.

We see no cause to disturb our precedential decision, and continue to hold that the Federal Foreclosure Bar preempts the Nevada Foreclosure Statute for the reasons stated therein.

## C.  Whether FHFA Violated Due Process.

SFR argues that FHFA deprived SFR of a property right without due process, in violation of the Fifth Amendment to the United States Constitution.  *See* U.S. Const. amend. V. SFR argues this case involves a due process context not discussed in *Skylights*, *supra* n.2, namely, the interplay between a federal law and property interests recognized by

---

[4] This conclusion was reiterated in *Elmer*, 707 F. App'x at 427 (unpublished) ("[T]he Federal Foreclosure Bar preempts the Nevada law to the extent that the Nevada law would permit a foreclosure on a superpriority lien to extinguish Freddie Mac's interest, without the Agency's consent, while Freddie Mac is under the Agency's conservatorship."), *supra* n.3.

state law.  SFR contends that, within this context, "the interplay between state and federal law implicates *deprivation*, not preemption."  Specifically, SFR asserts that "Nevada law recognizes the interests that purchasers obtain at association sales, including free and clear title," and that "Nevada Law recognizes SFR's interests in the five houses." SFR argues that FHFA deprived SFR of its interests by affirmatively determining not to consent to the HOA foreclosure sales at issue here.

SFR's arguments lack merit.  First, SFR's assertions that Nevada law provided it with a constitutionally protected property interest in purchasing the houses with free and clear title are incorrect.  Second, assuming arguendo SFR possessed a protected property interest, it was not deprived of that interest without adequate procedural protections.

**1.  The Existence of a Constitutionally Protected Property Interest.**

"A procedural due process claim has two distinct elements:  (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).    Protected property interests derive from "an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  However, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."  *Roth*, 408 U.S. at 577.  Thus, "[t]he

property interests that due process protects extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'" *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1191 (9th Cir. 2015), *as amended on denial of reh'g and reh'g en banc* (Jan. 29, 2016) (quoting *Roth*, 408 U.S. at 576–77). Further, "[a] legitimate claim of entitlement is 'determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms.'" *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1030 (9th Cir. 2010) (quoting *Wedges/Ledges of Cal., Inc. v. Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994)). "A mere 'unilateral expectation' of a benefit or privilege is insufficient[.]" *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998) (quoting *Roth*, 408 U.S. at 577).

SFR's claimed property interest in purchasing the Properties at the HOA foreclosure sales with free and clear title is unfounded. First, the federal preemption at work in this case forecloses that purported interest prior to its vestment in SFR. As stated *supra*, in *Berezovsky*, 869 F.3d at 930–31, we held that "the Federal Foreclosure Bar implicitly demonstrates a clear intent to preempt Nevada's superpriority lien law. . . . As the two statutes impliedly conflict, the Federal Foreclosure Bar supersedes the Nevada superpriority lien provision." Here, because FHFA did not consent to the HOA foreclosure sales, those sales were not in accordance with law. Thus, the Nevada Foreclosure Statute does not function to provide SFR with a constitutionally protected property interest in purchasing the Properties with free and clear title.[5]

---

[5] Citing *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 316 (D.C. Cir. 2014), SFR argues that "state law determines whether

'property' exists. If state law recognizes an interest, then due process is triggered." SFR's citation to *Ralls* is inapposite. Quite apart from the fact that *Ralls* comes from the D.C. Circuit and is not binding here, it is readily distinguishable, and not analogous to the case before us. Substantively, *Ralls* presents a scenario wherein it was undisputed that appellant obtained a protected property interest under Oregon state law—specifically, ownership in certain companies and their tangible assets, including local easements permitting construction of wind turbines, on an Oregon farm. 758 F.3d at 315 ("[T]here can be no doubt that Ralls's interests in the Project Companies and their assets constitute 'property' under Oregon law."). The D.C. Circuit agreed with this conclusion of the district court. *Id.* Following appellant's purchase of that property, the President of the United States cancelled the transaction on the authority of the Defense Protection Act of 1950 ("DPA"), which provides that the President may "take such action for such time as the President considers appropriate to suspend or prohibit any covered transaction that threatens to impair the national security of the United States." 50 U.S.C. § 4565(d)(1) (originally codified as amended at 50 U.S.C. app. § 2170(d)(1)), *quoted in Ralls*, 758 F.3d at 303.

The Circuit Court reversed the district court's legal conclusion that appellant's state law property interests were not constitutionally protected due to a federal contingency in the form of the DPA. Instead, the D.C. Circuit determined, "[t]here is no contingency built into the *state* law from which [appellant's] property interests derive and to which interests due process protections traditionally apply." 758 F.3d at 316–17 (emphasis in *Ralls*). The D.C. Circuit ultimately concluded that the President's action deprived the appellant of its constitutionally protected property interests without due process of law. *Id.* at 319.

The state and federal statutory interplay in the instant case is altogether different. SFR's argument is deficient because the district court here did not read a federal contingency into a state law otherwise pronouncing protected property interests. Instead, the Federal Foreclosure Bar preempts the Nevada Foreclosure Statute as regards HOA foreclosure sales on properties in which FHFA maintains an interest, and proscribes those sales by default.

SFR's asserted accession to property "interests that purchasers obtain at association sales, including free and clear title," is not mandated by the Nevada Foreclosure Statute. *See Johnson*, 623 F.3d at 1030. The relevant provision, NRS § 116.3116(2), provides that "[a] lien under this section is prior to all other liens and encumbrances on a unit [with certain exceptions]," and thus generally has superpriority. This superpriority lien belongs to "[t]he association." NRS § 116.3116(1). The statute does not mandate, and SFR has presented no language mandating, vestment of rights in purchasers at HOA foreclosure sales. *Id.* SFR therefore lacks "a legitimate claim of entitlement," *Roth*, 408 U.S. at 577, deriving from "the language of the statute," since, here, the asserted entitlement is not "couched in mandatory terms." *Johnson*, 623 F.3d at 1030 (quoting *Wedges/Ledges of Cal.*, 24 F.3d at 62). Rather, SFR's expectation of obtaining free and clear title at an HOA foreclosure is more akin to a "unilateral expectation" of a benefit or privilege. *Nunez*, 147 F.3d at 872 (quoting *Roth*, 408 U.S. at 577).[6]

---

[6] This approach is consistent with *Berezovsky*, 869 F.3d at 927 n.2. In that case, the buyer of a property at an HOA foreclosure sale argued that the Federal Foreclosure Bar violates due process because the statute "lack[s] procedures for notice to interested parties and procedures for any hearing." *Id.* (alteration in *Berezovsky*). At oral argument, the buyer's counsel acknowledged his due process contention sought to vindicate the HOA's property rights, but not his own, and that he lacked standing to assert that claim. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Skylights*, 112 F. Supp. 3d at 1153–54 (assuming without analysis that an HOA possessed a protected property interest in its superpriority lien under the Nevada Foreclosure Statute for procedural due process purposes, but assuming no property interest on behalf of the plaintiff property buyer at foreclosure). We note that here, SFR seeks to assert its own property rights, and no party has suggested SFR lacks standing to assert its due process argument.

Further, SFR's characterization of FHFA's non-consent to the HOA foreclosure sales as affirmative declarations is incorrect. The Federal Foreclosure Bar provides that "[n]o property of the Agency shall be subject to . . . foreclosure . . . without the consent of [FHFA]." 12 U.S.C. § 4617(j)(3). The plain text of this provision does not necessitate a decision by FHFA not to consent to a given foreclosure sale; rather, the bar on foreclosure sales lacking FHFA's consents applies by default. *See Berezovsky*, 869 F.3d at 929 ("The Federal Foreclosure Bar does not require the Agency to actively resist foreclosure. . . . Rather, the statutory language cloaks Agency property with Congressional protection unless or until the Agency affirmatively relinquishes it.") (citation omitted). Indeed, the record before this Court does not demonstrate that FHFA made any determinations not to consent to the HOA sales of the Properties.

Nor did the absence of the Enterprises' names in the mortgage loans' local recording documents at the time of the HOA sales undercut the Enterprises' interests and provide SFR free and clear title to the Properties. In *Berezovsky*, we explained that, under Nevada law, the note owner's name need not appear in the mortgage's recording. "Nevada law requires recording of a lien for it to be enforceable, but does not mandate that the recorded instrument identify the note owner by name." *Berezovsky*, 869 F.3d at 932 (citing Nev. Rev. Stat. § 106.210). "Nevada law thus recognizes that, in an agency relationship, a note owner remains a secured creditor with a property interest in the collateral even if the recorded deed of trust names only the owner's agent." *Id.* (citing *In re Montierth*, 354 P.3d 648, 651 (Nev. 2015)). In *Berezovsky*, though the recorded deed of trust omitted note owner Freddie Mac's name, Freddie Mac introduced evidence in the district court showing it acquired the loan secured by the relevant property years earlier, and that the

recorded deed of trust beneficiary was Freddie Mac's loan servicer. Freddie Mac's property interest was thus valid and enforceable under Nevada law. *Id.* at 932–33. Under HERA, FHFA succeeded to Freddie Mac's interest in the property at issue, and the Federal Foreclosure Bar shielded that interest.

In the case before us, the liens were recorded. The Enterprises introduced evidence in the district court showing one of them acquired each of the loans securing the Properties prior to each of the HOA foreclosure sales. The district court based its finding that an Enterprise had an interest in each Property on the fact that, in each case, a servicer acquired a beneficial interest in the respective Property's deed of trust, and serviced the respective mortgage loan on behalf of one of the Enterprises. Each acquisition of a Property's deed of trust by a servicer occurred on a date prior to the respective HOA foreclosure sale. The district court thus found that FHFA, which succeeded to the Enterprises' assets per HERA, held an interest in the Properties prior to the sales. Accordingly, the named beneficiary under the recorded deed of trust in each case is someone other than the note owner, one of the Enterprises. However, per *Berezovsky*, 869 F.3d at 931–33, and under Nevada law, the Enterprises' purchases conveyed valid interests in the Properties. Further, HERA does not require the Enterprises to have recorded their ownership of the liens in local recording documents for FHFA to have succeeded to those valid interests upon inception of conservatorship.

## 2. Whether FHFA Denied SFR Adequate Procedural Protections.

Even assuming arguendo that SFR had some constitutionally protected property interest, SFR received all

the procedural protections it was due.  The second element of a procedural due process claim is "a denial of adequate procedural protections." *Brewster*, 149 F.3d at 982.  "[O]nce a court determines that a protected property interest has been taken, 'the question remains what process is due.'" *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017) (alteration in *Roybal*) (quoting *Brewster*, 149 F.3d at 983). SFR argues that it was deprived of due process because the Federal Foreclosure Bar lacks integral procedural protections, such as the ability to obtain consent to the HOA sales from FHFA.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *City of W. Covina v. Perkins*, 525 U.S. 234, 242 (1999).

SFR's argument fails.  Due process is a flexible concept, and the procedural protections it demands are molded by the relevant factual context.  *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017); *see Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) ("Once a protected interest is found, we employ the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319[, 335] (1976) . . . . (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional safeguards; and (3) the government's interest, including the burdens of additional procedural requirements.") (citation omitted). The Federal Foreclosure Bar dictates that "[n]o property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency."  12 U.S.C. § 4617(j)(3).  As relevant to the facts of this case, the provision patently modifies the conduct of a party seeking to foreclose upon or sell FHFA property. Therefore, a theoretical deprivation of due process under § 4617(j)(3) involving an HOA foreclosure sale, would implicate the potential seller, or the foreclosing HOA, and not the buyer.  *See, e.g.*, *Skylights*, 112 F. Supp. 3d at 1153–

55 (analyzing, under similar facts, an HOA's procedural due process argument and concluding that the HOA's due process rights were satisfied by sound legislative procedure in enacting § 4617(j)(3)).  Accordingly, SFR articulates no risk of erroneous deprivation of a buyer's interest under the statute's procedures, and any additional procedures so providing would burden the government's interest, as codified in the Federal Foreclosure Bar, in protecting the Enterprises' assets from foreclosure.  We are not persuaded that the absence of an explicit procedural avenue through which a possible buyer may obtain, from FHFA, consent to a foreclosure sale by an HOA constitutes an impermissible lack of procedural safeguards.

SFR also contends that that the Enterprises' interests in the Properties were hidden from the public until the commencement of this litigation, and were not "reasonably calculated . . . to apprise interested parties of the pendency of the action."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154, 1158 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2296 (2017).  This argument too is unpersuasive.  As explained *supra*, under Nevada law, the note owner's name need not appear in the local recording documents, and, as the district court found, the Enterprises possessed valid interests in the Properties at the time of the HOA foreclosure sales.  Again, HERA does not require that potential buyers received notice of FHFA's or the Enterprises' interests in properties whose sales are prevented by the Federal Foreclosure Bar.  Further, contrary to SFR's characterizations, FHFA did not affirmatively decline to consent to the HOA foreclosure sales; rather, the protections of the Federal Foreclosure Bar applied by default, rendering those sales contrary to law.  Moreover, SFR does not argue, and the record does not disclose, that it sought FHFA's

consent to the relevant HOA foreclosure sales, nor that it was incapable of learning of the Enterprises' interests in the Properties through due diligence. *See Gallo v. U.S. Dist. Court For Dist. of Arizona*, 349 F.3d 1169, 1181 (9th Cir. 2003) ("[I]t has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights.") (alteration in *Gallo*) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 536 (1982)).

## D. Whether FHFA Violated "Reasoned Decisionmaking."

SFR argues that the process FHFA used in deciding whether to consent to foreclosure on the Properties was not "logical and rational," because no such process exists. Under the doctrine cited by SFR, "[f]ederal administrative agencies are required to engage in 'reasoned decisionmaking.'" *Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015) (quoting *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998)). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Id.* (quoting *Allentown Mack*, 522 U.S. at 374). Thus agency action is lawful only if it relies "on a consideration of the relevant factors." *Id.* (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)).

SFR's arguments again lack merit. SFR's citation to *Michigan*, 135 S. Ct. 2699, is inapposite. That case considered "EPA's decision to regulate power plants under [42 U.S.C.] § 7412," a provision which authorizes the EPA to regulate power plants "if it finds such regulation is appropriate and necessary." 135 S. Ct. at 2706. In the instant

case, by contrast, the text of the Federal Foreclosure Bar reads that "[n]o property of [FHFA] shall be subject to . . . foreclosure . . . without the consent of [FHFA]." 12 U.S.C. § 4617(j)(3). While presuming that FHFA may consent to foreclosure sales such as those that the HOAs here conducted, this provision does not require an affirmative decision by FHFA *not* to consent. SFR essentially repackages its argument that FHFA deprived SFR of due process by again characterizing FHFA's lack of consent to the HOA foreclosure sales as a series of affirmative decisions not to consent to each sale. Here, however, as explained *supra*, FHFA did not perform any, and the record discloses no, agency action subject to an analysis of whether "the process by which [FHFA] reache[d] that result [was] logical and rational." *Michigan*, 135 S. Ct. at 2706 (quoting *Allentown Mack*, 522 U.S. at 374).

## CONCLUSION

FHFA, as the Enterprises' conservator, possessed enforceable interests in the Properties at the time of the HOA foreclosure sales. The Federal Foreclosure Bar preempts the Nevada Foreclosure Statute to the extent that an HOA's foreclosure of its superpriority lien cannot extinguish a property interest of an Enterprise while it is under FHFA's conservatorship. Accordingly, the HOA foreclosure sales on the Properties did not extinguish the Enterprises' interests in the Properties and thus did not convey the Properties free and clear of their deeds of trust to SFR. Further, because the Nevada Foreclosure Statute did not imbue SFR with a constitutionally protected property interest, and SFR was not denied adequate procedural protections, SFR did not suffer a deprivation of due process by virtue of this statutory framework.

The district court properly denied Defendant SFR's Motion to Dismiss and granted the Motion by Plaintiffs FHFA and the Enterprises for Summary Judgment.[7]

**AFFIRMED.**

---

[7] Plaintiffs, in their third cause of action in the first amended complaint, sought "a permanent injunction that enjoins any claim by named Defendants or absent members of the Proposed Class that an HOA Foreclosure Sale extinguished an Enterprise Lien, or asserting any slander of title claim against Plaintiffs in the absence of satisfaction of the Enterprise Lien." In issuing its order, the district court "granted [plaintiffs] summary judgment on all of their claims," but did not mention a permanent injunction.

SFR argues that the district court's order contravened Fed. R. Civ. Pro. 65(d), which provides that "every order granting an injunction . . . must: (A) state the reasons why it issued; (B) state the terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." Counsel for FHFA at oral argument agreed that no injunction is in place. In any event, our holding moots SFR's contention.